1794.

---

### Leffee of DAVID GILLILAND *v.* DAVID HANNA.

THIS was an ejectment for 300 acres of land on a demife dated 20th *January*, 1793, for five years.

The plaintiff produced a warrant for 150 acres of land on the waters of *Turtle* creek, in *Pitt* townfhip, *Weftmoreland* county, joining *John Roadarmer* and others, dated 2d *May*, 1785, in name of *Adam Gilliland*; and a furvey on it of 133 acres and 149 perches, made 18th *September*, 1786.

He then offered *Adam Gilliland* as a witnefs to prove that the warrant was taken out in his name, as a mere truftee, and that *David Gilliland* was the real owner.

This was objected to without a conveyance.

*Brackenridge*, for the plaintiff. By the regulations of the Land-Office, a man could take out but one warrant in his own name. This is a trust. The title is really in the *cestui que trust*. Why should he not support an ejectment? The case of a trust is out of the statute of frauds.

*Woods*, for the defendant. It is the plaintiff's own fault, that he had not a title, when he commenced this ejectment. The statute of frauds precludes any parole evidence of title.

PRESIDENT. It will be best to receive the testimony, but reserve the point for argument, if there should be a verdict for the plaintiff; and if afterwards, on argument, the testimony should be thought inadmissible, judgment of nonsuit will be entered.

*Adam Gilliland* then proved, that *he* did not take out the warrant or pay any money on it; and that, in 1785, he heard *David Gilliland* say, he would take out a warrant in his own name. Another witness proved that *David Gilliland* paid for the warrant.

The defendant produced a location, or order of survey, No. 1486, dated 3d *April*, 1769, in name of *George Thomson* for 300 acres adjoining *John Fraizer* and *William Powel*, on both sides of *Turtle* creek, about three quarters of a mile from the mouth; and a survey made by *William Thomson* (the father of *George*, and then the surveyor of the district) 17th *April*, 1769, of 252¾ acres, near *Turtle* creek, *Westmoreland* county; and a warrant of acceptance, 2d *January*, 1788, of this survey made on No. 1486, dated 3d *April*, 1769; and a patent, dated 2d *January*, 1788, on this survey, and location No. 1486.

The plaintiff then produced,

1. A release or assignment by *George Thomson* to *John Perry* in fee-simple, dated 23d *April*, 1784, reciting,— " Whereas, on 3d *April*, 1769, *William Thomson* procured an order in my name, for 300 acres of land, situate on both sides of *Turtle* creek, joining *John Frazier* and *William Powel*, which said *William Thomson* conveyed to *Conrod Winemiller*, and whereas said *Conrod* conveyed to *John Perry* and *Daniel M'Clintock*, and *Daniel M'Clintock* conveyed his half to *John Perry*;

1794.

now I do affign and releafe all my right and title to fame land to *John Perry* his heirs and affigns."

2. A conveyance by *William Thomfon* to *Conrod Winemiller*, dated 3d *May*, 1771, for the confideration of 25*l.* " of all his right to a certain tract of land fituate on both fides of *Turtle* creek, and joining lands of *John Frazier* and *William Powel*, containing 300 acres more or lefs, being the fame granted to me by an order of furvey, dated 3d *April*, 1769, No. to have and to hold, &c. fubject to purchafe money, &c."

3. An order of the Board of Property, dated 6th *January*, 1794, " *John Perry* ftated to the Board, that two furveys being made of two different tracts of land, on an application of *George Thomfon*, No. 1486, dated 3d *April*, 1769, the right to one of which is vefted in him, and that *George Thomfon* has obtained a patent for the other tract. And on examining the furveys and transfers, it is thought proper to allow *Perry*, or thofe reprefenting him, a patent, on payment of the purchafe money and fees of office, according to the terms on which faid application was entered.

Evidence was then given of an improvement on the land in queftion, in 1771, made by one *John Huchefon*, who cleared ten acres, had a houfe and garden, raifed grain on it, and lived on it three or four years, after which he loft his fenfes, and his wife fold the land to *William M'Fatrick*, who lived on it a confiderable time, till killed by the *Indians*, leaving a daughter yet alive. His executor put a tenant on it, in 1786, who lived on it two years. Then *Thomfon* brought an ejectment againft him, and, the executor having no money to maintain the law-fuit, the tenant gave up to *Thomfon*, and became his tenant.

*Woods*, for defendant. There are not two furveys on the location No. 1486, but only one made on the land in difpute, on which, as was determined yefterday, *Thomfon* had a right to lay his location, waving the land originally intended. And from this furvey, made 17th *April*, 1769, *George Thomfon* derives a good title. If he did not, an equitable title is in the heir of *M'Fatrick*, and the defendant may keep poffeffion, till this heir claims it. *Leffee of Waddle v. Gray. Ante p. 248.*

*Brackenridge*, for the plaintiff. The transfer, made by

1794.

*William Thomſon* to *Conrod Winemiller*, of the land de-ſcribed in the location, and referring to it, being noto-rious in the country was a notice to all men, that the land now in diſpute was clear of this location, and might be taken by any other title. Therefore this location being otherwiſe ſatisfied, by the land deſcribed in it, and now held by the aſſignee of *William Thomſon*, the real owner of the location, *George Thomſon*, his ſon can from this location derive no title to the land in diſpute; for an attempt like this, to cover two ſeparate ſurveys under one location, will not be countenanced.

To ſuffer *George Thomſon* to ſhelter himſelf under the equitable title of *M'Fatrick*, is carrying the title ariſing from ſettlement farther than it ever has been carried. The reaſon why ſettlements are regarded is that it would be iniquitous to take from a man the fruits of his labour. But that is no reaſon why the land ſhould not be taken from another man, who never expended any labour on it.

PRESIDENT. It does ſeem, from the papers pro-duced, and eſpecially from the order of the Board of Property, who had all the means of information, that two ſurveys have been made by *William Thomſon*, on one location; that he ſold the land for which the loca-tion was taken out, for 25*l.*; and afterwards laid this location on the land in diſpute, for which he has ſince obtained a patent. It is not neceſſary, at preſent, to give any opinion on this.

*Runnington* 15

For it is a general principle, that, if there be, out of the plaintiff, a better title in any man, than the plain-tiff's, the defendant ſhall keep poſſeſſion againſt the plaintiff, until the better title appear.

The claim ariſing from the ſettlement of a new coun-try, by the permiſſion of the proprietor, is meritorious. 1 *Veſey* 454. Lord *Hardwicke*, in the caſe of *Penn v.* lord *Baltimore*, ſays, that, in caſes of two great territories held of the crown, long poſſeſſion and enjoyment, peopling and cultivating countries, is one of the beſt evidences of ti-tles to lands, or diſtricts of lands, in *America*, that can be; for the great beneficial advantages ariſing to the crown, from ſettling, &c. is that the navigation and the commerce of this country is thereby improved.— Thoſe perſons, therefore, who make theſe ſettlements,

ought to be protected in the poſſeſſion, as far as law and equity can.

Courts of juſtice in *Pennſylvania* have recognized ſettlements, as equitable titles, or claims of preference.

On 2d *May*, 1785, this land was ſettled, and *Gilliland* could not take it as vacant land ; nor does he derive any claim from the ſettlement on it. It is iniquitous to take the ſettlement of another. It was iniquitous in *Gilliland*, to attempt to take it away from the heir of *M'Fatrick*. The title of *Thomſon*, if any, exiſted previous to *M'Fatrick's* ſettlement. Therefore the iniquity, if any, in *Thomſon*, reſpecting *M'Fatrick*, is leſs than that of *Gilliland :* becauſe *Thomſon* only proſecutes a title which commenced before *M'Fatrick's* equity ; while *Gilliland* proſecutes a title which commenced after the equity of *M'Fatrick*. Whatever *Thomſon's* title may be, *Gilliland's* is bad, and the defendant is not to be diſturbed by it.